# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CASE NO.: 5:19-CR-72-KDB-DSC

UNITED STATES OF AMERICA

v.

RONNIE DEAN BROWN

### DEFENDANT'S SENTENCING MEMORANDUM AND
### MOTION FOR DOWNWARD VARIANCE

Defendant Ronnie Brown comes before the Court for sentencing having pled guilty to Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2). Mr. Brown has taken full responsibility for his conduct, and otherwise complied with the terms of his plea agreement with the government. Through counsel, he submits the following sentencing memorandum to assist the Court in fashioning an appropriate sentence pursuant to 18 U.S.C. § 3553(a).

In this case, a sentence in the range called for by strict application of the guidelines (151-188 months) would be unduly harsh and would exceed the punishment required to achieve the legitimate purposes of sentencing as set forth in 18 U.S.C. § 3553. Certainly Mr. Brown accepts responsibility and must be punished; the question is degree. Should he receive a sentence within the guideline range that will imprison him for a substantial part of the rest of his life?

1

Mr. Brown has zero criminal history points. There is no indication that he has ever physically mistreated a child in any way. Mr. Brown did not create any of the material at issue. In it undeniable that the material is deeply disturbing, and the creation and transmission of it victimized children. At the same time, however, the guidelines call for punishment that is excessive. Before imposing sentence in a case similar to this one, one district judge summarized the case for downward variance as follows:

> The Guidelines' sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders. In the context of this and other Internet child pornography crimes that involve peer-to-peer networks, the Guidelines provide little distinction between a low-level distributor and a high-level distributor and no distinction between one who merely possesses and those who "receive," as opposed to "distribute." In this court's experience, there is essentially no Internet child pornography offender who could end up with a Guidelines-recommended sentence that falls at or close to the low end of the statutory range for either a possession or receipt offense. . . .
>
> [Defendant] is a typical offender in that he has an insignificant criminal history. He is subject to enhancements for use of a computer and for the number and type of images that apply in virtually every case. The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court. The enhancements for use of a computer and number of images lack value as a reliable proxy for culpability and are a poor gauge of relative levels of fault between offenders.

*United States v. Mallatt*, 2013 WL 6196946 (D. Neb. Nov. 27, 2013) at *15.

As set forth below in greater detail, the same legal and factual issues weigh in favor of a downward variance in this case.

2

I. **The Recommended Sentence under U.S.S.G. § 2G2.2 is Seriously Flawed and Excessive.**

Courts around the country have recognized the irrationality of the child pornography guidelines. In FY 2011, for example, 62.8% of defendants sentenced for non-production offenses under U.S.S.G. § 2G2.2 received sentences *below* their applicable guidelines. See Executive Summary of the United States Sentencing Commission Report to Congress dated February 27, 2013.[1] Reasons courts have rejected the harshness of the guideline are as follows.

A. Historical Background of U.S.S.G. § 2G2.2

When the Sentencing Guidelines were enacted in 1987, only trafficking in child pornography was covered by the guidelines. Alan Ellis and Karen Landau, *Child Pornography Guidelines Are Ripe for Challenge*, Criminal Justice, Vol. 24, No. 2, Page 1, Summer 2009 (citing U.S.S.G. § 2G2.4 (1990)).[2] Three years later, the Sentencing Guidelines were expanded to cover possession, setting a base offense level of 10, with one possible two level enhancement for images of minors under age 12. Id.

Since its enactment, the guidelines for possession and trafficking of child pornography have undergone eleven (11) amendments, resulting in an average *annual* increase in sentences imposed by over seven months. Id., at 1; Troy

---

[1] https://www.ussc.gov/about/news/press-releases/february-27-2013. This is the most recent summary the undersigned has been able to find.
[2] https://alanellis.com/wp-content/uploads/2013/11/Child-Pornography-Guidelines-Are-Ripe-for-Challenge.pdf

3

Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines,* at 3 (2009).[3] These amendments are exceptional in that they are the result of congressional directives rather than the result of penalogical and sociological expert study. See Ellis and Landau at 1. More exceptional still is that these increasingly severe and harsh increases "were largely the consequence of numerous morality earmarks, slipped into larger bills over the last fifteen years, often without notice, debate or study of any kind. Congressionally mandated changes were even enacted to prevent the Commission from implementing carefully considered modifications which would have lowered applicable offense levels." Id.; United States v. Shipley, 560 F.Supp.2d 739, 744 (S.D. Iowa 2008) ("These modifications do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses."). Moreover, these arbitrary increases "destroyed some of the careful distinctions the [Sentencing] Commission had drawn between true peddlers of child pornography and more simple possessors or transporters." United States v. Hanson, 561 F.Supp.2d 1004, 1009 (E.D. Wisc. 2008).

In 2003, as part of the Feeney Amendment to the PROTECT Act, Congress effected the most severe changes to § 2G2.2 without study, analysis, stated rational, or virtually any debate. "The purpose of the PROTECT Act [(Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today)] was to

---

[3] https://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2016/report_stabenow.pdf.

reconcile various bills, establish a nationwide Amber Alter system to be used in cases of child kidnapping, and to address virtual child pornography." Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines, at 19. "As the popular legislation progressed, freshman Congressman Tom Feeney, at the direction of two Justice Department attorneys, proposed an unrelated amendment to the bill that would directly amend various Guidelines." Id. Among the proposed changes was a maximum five-level enhancement based on the number of pictures possessed, an enhancement for "material that portrays sadistic or masochistic conduct," and the establishment of the five year mandatory minimum. Id., at 20. "Despite objections by the Sentencing Commission, the Chairman of the House Committee on the Judiciary, the Judicial Conference of the United States, and the American Bar Association, that those changes were being made without adequate review and analysis, the Protect Act became law on April 30, 2003." Id., at 19; see also United States v. Hanson, 561 F. Supp.2d 1004 (E.D. Wisc. 2008).

Numerous judges have recognized the injustice which results from excessively high guidelines set purely as a result of politics rather than through the United States Sentencing Commission, with its specialized mandate and experience, working with the benefit of empirical evidence and study. As noted by one Court:

> Congress established the Sentencing Commission to "formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. Kimbrough, 552 U.S. at ---, 128 S.Ct. at 574 (noting the key role preserved for the Sentencing Commission); Rita

v. United States, 551 U.S. at ---, 127 S.Ct. at 2564. In that institutional role, the Sentencing Commission "has the capacity courts lack to 'base its determination on empirical data and national experience, guided by a professional staff with appropriate expertise.'" Kimbrough, 552 U.S. at ---, 128 S.Ct. at 574 (*quoting* United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)); see also Gall, 552 U.S. at ---, 128 S.Ct. at 594 (noting that "even though the Guidelines are advisory rather than mandatory, they are ... the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").

However, when Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" See e.g., Kimbrough, 552 U.S. at ---, 128 S.Ct. at 574 (*quoting* Rita, 551 U.S. at ---, 127 S.Ct. at 2465); see also Gall, 552 U.S. at ---, 128 S.Ct. at 594 n. 2 (noting that not all Guidelines are tied to empirical evidence, most notably, those for drug offenses). In cases involving application of Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role," it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." Kimbrough, 552 U.S. at ---, 128 S.Ct. at 575.

United States v. Baird, 580 F.Supp.2d 889, 892 (D. Neb. 2008).

Congress established the Sentencing Commission to "formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. Kimbrough, 552 U.S. at ---, 128 S.Ct. at 574 (noting the key role preserved for the Sentencing Commission); Rita v. United States, 551 U.S. at ---, 127 S.Ct. at 2564. In that institutional role, the Sentencing Commission "has the capacity courts lack to 'base its determination on empirical data and national experience, guided by a professional staff with appropriate expertise.'" Kimbrough,

6

552 U.S. at ---, 128 S.Ct. at 574 (*quoting* United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)); see also Gall, 552 U.S. at ---, 128 S.Ct. at 594 (noting that "even though the Guidelines are advisory rather than mandatory, they are ... the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").

However, when Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" See e.g., Kimbrough, 552 U.S. at ---, 128 S.Ct. at 574 (*quoting* Rita, 551 U.S. at ---, 127 S.Ct. at 2465); see also Gall, 552 U.S. at ---, 128 S.Ct. at 594 n. 2 (noting that not all Guidelines are tied to empirical evidence, most notably, those for drug offenses). In cases involving application of Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role," it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." Kimbrough, 552 U.S. at ---, 128 S.Ct. at 575; United States v. Baird, 580 F.Supp.2d 889, 892 (D. Neb. 2008).

One example of the lack of attention and study in enacting these politically motivated amendments is the two level enhancement for the use of a computer.

7

U.S.S.G. § 2G2.2(b)(6). The Sentencing Commission has publicly questioned this enhancement because "online pornography comes from the same pool of images that can be found in specialty magazines or adult bookstores," and the enhancement does not differentiate based on the manner or extent to which the use of a computer facilitated the offense. See H.R. Rep. 104th Congr., 1st Sess. 3-4 (1995) as reprinted in 1996 U.S.C.C.A.N. 759. The enhancement applies equally to someone who uses a computer to set up a sophisticated and extensive network of illicit pornography with a large number of subscribers as it does to someone such as Mr. Brown, whose offense conduct involves transmission of images to or from a solitary sender. Further, the enhancement does not differentiate between defendants who use a computer to provide the images to children or to entice children – two of the reasons for enacting the enhancement. Reluctantly adding the enhancement to the final version of Sex Crimes Against Children Act of 1995, and knowing that the enhancement would apply in virtually every case, the Sentencing Commission stated that "[n]ot all computer use is equal … [and] sentencing policy should be sensitive to these differences in culpability so that punishments are tailored to fit the circumstances of each individual's case." Id. at 29. Here, the two-level enhancement means that Mr. Brown's minimum guideline sentence goes from 121 months to 151 months – or **an additional two and one half years incarceration** – because he used a computer in his home to commit the offense.

B. <u>Application and Case Law</u>

When the Guidelines are not empirically grounded – that is, without study or the support of empirical data demonstrating the penalogical value of increases in sentencing severity – the Guidelines are less reliable as a sentencing tool, and a sentencing judge is even free to depart from them based on *policy* disagreement. <u>Kimbrough v. United States</u>, 128 S.Ct. 558, 574 (2007); <u>Spears v. United States</u>, 129 S.Ct. 840, 843 (2009); <u>Shipley</u>, 560 F.Supp.2d 739, 744 (S.D. Iowa 2008). Again, this may be one reason federal judges are sentencing those convicted of child pornography offenses below the § 2G2.2 guidelines in over half of such cases.

A main concern for judges across the nation is that, due to Congress' haphazard modifications of § 2G2.2 based on political motives and not study, the Guidelines provide for excessive and unreasonable sentences in many cases. The primary reason is that the many specific offense characteristics almost always apply, and they operate to exponentially increase an offender's recommended guideline sentence. The specific offense characteristics are, therefore, not a reflection of genuinely aggravating factors. Courts across the country have taken note and refused to give deference to the Guidelines, fashioning sentences below the Guideline range. <u>See</u> <u>e.g.</u>, <u>United States v. Grober</u>, 595 F.Supp.2d 382, 392-93 (D.N.J. 2008); <u>United States v. Cruickshank</u>, 667 F.Supp.2d 697, 702 (S.D. W.Va. 2009). Many of these Courts have relied upon the careful review and study of Federal Public Defender Troy Stabenow in their conclusion, citing the following argument:

9

The flaw with U.S.S.G. § 2G2.2 today is that the average defendant charts at the statutory maximum, regardless of acceptance of responsibility for Criminal History. As noted by the Guidelines Commission, there are "several specific offense characteristics which are expected to apply in almost every case (e.g. the use of a computer, material involving children under the 12 years of age, number of images)." *See* Amendment 664, U.S.S.G. App. C "Reason for Amendment", (November 1, 2004). The internet provides the typical means of obtaining child pornography resulting in a two-level enhancement. *See* U.S.S.G. § 2G2.2(b)(6). Furthermore, as a result of internet swapping, defendants readily obtain 600 images with minimal effort, resulting in a five-level increase. *See* U.S.S.G. § 2G2.2(b)(7)(D). The 2004 Guidelines created an Application Note defining any video-clip as creating 75 images. *See* U.S.S.G. § 2G2.2(b)(2),(4). Thus one email containing eight, three-second video clips would also trigger a five-level increase. Undoubtedly, as the Commission recognized, some of these images will contain material involving a prepubescent minor and/or material involving depictions of violence (which may not include "violence" per se, but simply consist of the prepubescent minor engaged in a sex act), thereby requiring an additional six-level increase. See U.S.S.G. § 2G2.2(b)(2), (4). Finally, because defendants generally distribute pornography in order to receive pornography in return, most defendants receive a five-level enhancement for distribution of a thing of value. See U.S.S.G. § 2G2.2(b)(3)(B). Thus, an individual who swapped a single picture, and who was only engaged in viewing and receiving child pornography for a few hours, can quickly obtain an offense level of 40. Even after Acceptance of Responsibility, an individual with no prior criminal history can quickly reach a Guideline Range of 210-262 months, where the statutory maximum caps the sentence at 240 months. See U.S.S.G. § 5G1.1(a). The results are illogical; Congress set the statutory range for first time distributors as five to twenty years. Congress could not have intended for the average first time offender with no prior criminal history to receive a sentence of 210 to 240 months. An individual with a Criminal History Category of II faces a Guideline range of 235 to 240 months, and any higher Criminal History score mandates the statutory maximum. These results run contrary not only to Congressional will, but also to a principal Guideline policy—providing harsher penalties to individuals with more significant Criminal History scores while still retaining an incentive for pleas at all Criminal

History levels.

United States v. Hanson, 561 F.Supp.2d 1004, 1010-11 (E.D.Wisc. 2008).

Indeed, the irrational, outdated and unduly harsh nature of the guideline has been noted by the Sentencing Commission itself:

> [F]our of the of six sentencing enhancements in §2G2.2 — those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels — now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability. These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders. Indeed, most of the enhancements in §2G2.2, in their current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail.

Executive Summary of the United States Sentencing Commission Report to Congress dated February 27, 2013 at iii.

Accordingly, if this Court accedes to the defense request to impose a sentence that is significantly less than the guideline range, it would hardly be the first time a court fashioned such a sentence in this circumstance. United States v. Hahn, 2011 WL 23083 at *9 (D. Neb. Jan. 3, 2011) (departing from guideline range of 210 to 240 months to impose the five-year mandatory minimum sentence); see also United States v. Strayer, 2010 WL 2560466, at *11 (D.Neb. 2010); United States v. Howard, 2010 WL 749782 (D. Neb. March 1, 2010) (sentencing defendant to 60 months, rather than 210 to 262 months, for possession of over 25,000 images); United States v. Grober, 595 F.Supp.2d 382 (D. NJ 2008) (sentencing defendant to 60 months for possession of more than 1500 images and 200 videos).

11

## II. Because Of The Flaws Of § 2G2.2, The Court Should Not Apply The Guideline Range, But Rather Be Guided By The 3553(a) Factors And The Mandatory Minimum.

As the Court is already aware, a sentencing court is tasked with fashioning an appropriate sentence only after considering § 3553(a)'s list of factors, because the sentencing judge is a better position than the Sentencing Commission or Congress to gain familiarity with the individual defendant and case. Rita v. United States, 127 S. Ct. 2456, 2469 (2007). The factors to be considered under § 3553(a) are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

12

A. <u>Nature of Offense</u>

First and foremost, Mr. Brown never used the pictures that he downloaded from the internet to entice a child, he never produced any pictures, and engaged in only minimal sharing of images. Furthermore, there is no indication that Mr. Brown ever had any improper contact with any child, or ever even attempted any such contact with a child.

In the previously cited <u>Hahn</u> opinion, the United States District Court for the District of Nebraska has described the spectrum of child exploitation offenses as follows:

> A possessor of child pornography is the least culpable in the chain and is a marginal player in the overall child exploitation scheme. The varying levels of participation and blameworthiness in connection with distribution are meant to be accounted for in the Guidelines' market-oriented scheme. It is clear that the statutes criminalizing possession and distribution of child pornography are aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters. Although file-sharing arrangements help facilitate Internet trafficking in child pornography, there is a qualitative difference between sharing one's computer files and selling child pornography for profit. This case does not involve any widespread distribution of child pornography or any pecuniary gain. Although the evidence shows that [defendant] distributed or shared files with at least one other person, the evidence does not show any large distribution network. [Defendant] did not possess child pornography in order to entice a child nor is there any indication that he has ever had any improper contact with an actual child, that he photographed minors engaged in sexual conduct, or ever made attempts to contact or entice a child. [Defendant] is a low-level consumer and somewhat inadvertent distributor of child pornography whose sentence should fall closer to the low end of the statutory range than to

13

the maximum.

Hahn, 2011 WL 23083 at *9. Mr. Brown's case shares many, if not all, of the same mitigating features as those present in Hahn.

B. History and Characteristics of Mr. Brown

1. *Throughout his life, Mr. Brown has had a positive impact on those around him.*

In the letters attached to this memorandum, Mr. Brown is described, variously, as ""honest and trustworthy,"[4] a great worker,"[5] a "good husband to my dear friend Kelly,"[6] a "positive influence in the lives of those he's come into contact with. . . who is very involved in his church"[7] and "a plain old country boy."[8] Letters submitted on Mr. Brown's behalf are attached hereto as Exhibit A.

Mr. Brown has shared his regret and remorse with those who know him well. As one friend puts it, "My understanding is that Ronnie Brown has expressed remorse at what he has done. Of course, when this question comes up, one wants to know, and His honor wants to know, "Is Ronnie sorry for what he did, or is he sorry he got caught?" From what people who have spoken to Ronnie since his incarceration, and from what I have witness (sic) first hand as Ronnie and I attended church together, I have come to the conclusion that Ronnie is truly repentant for what he has done to himself, his wife Kelly, his family, society, and his Lord Jesus Christ."[9]

---

[4] Letter from Brad Miller
[5] Letter from Angela and Delbert Bowden
[6] Letter from Christie Osborne
[7] Letter from Jackie Little
[8] Letter from Wanda Sue Cardwell
[9] Letter from Mac Burrus

14

### 2. *Mr. Brown poses minimal risk to children.*

The previously referenced 2013 report of the Sentencing Commission to Congress suggests indicates that sentencing decisions in child pornography cases, and the risk an offender poses to children, should be influenced by three main considerations: (i) the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the age of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technologies); (ii) the degree of an offender's involvement with other offenders — in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and (iii) whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense. Exhibit A at 12.

At his own expense, Mr. Brown submitted to evaluation by professor David Delmonico from Duquesne University in Pittsburgh, Pennsylvania and Elizabeth Griffin from Minneapolis, Minnesota. Delmonico and Griffin have extensive clinical and academic experience with child pornography offenders in cases involving the internet. They have also published extensively.

Their findings, based on their own experience and the criteria set out in the Commissions' report, are as follows:

(1) According to the testing, clinical interview, and historical information, it is our opinion that Mr. Brown does not clearly meet any criteria for a psychological disorder.

15

(2) Psychological testing results indicated no features, traits, or diagnosis of an antisocial personality disorder. This is important since antisocial traits can be indicative of a higher risk to the community and higher rates of recidivism.

(3) Based on the assessment of Mr. Brown's sexual interest (no interest in prepubescent children), the CASIC, and other historical information, it is our opinion that Mr. Brown does not meet the criteria for pedophilic disorder.

(4) Based on the totality of the data in this case, it is our opinion that Mr. Brown is a "low risk" for a future sexual offense behavior (online or offline).

(5) Based on the Risk Principle Mr. Brown would be best served from receiving consequences that are commensurate with his low risk level for sexual recidivism.

(6) Additionally, it is our opinion that Mr. Brown can be successfully managed on community supervision once released from prison.

Case Review and Evaluation Dated February 4, 2020. Attached hereto as Exhibit B.

    3.    *As a first-time offender, Mr. Brown has a low risk of recidivism.*

Mr. Brown is a first-time offender – a powerful prediction of his disinclination to reoffend and further evidence that the Guidelines overstate the need for incapacitation and specific deterrence. As part of its Fifteen Year Report, the Sentencing Commission undertook a massive study into predicting recidivism and how to effectively consider recidivism rates in imposing a just sentence. See U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (2004). In its study, the Commission found that a defendant's criminal history points are a powerful predictor of future risk for recidivism. With zero criminal history points, Mr. Brown presents only a little more than a 10% risk of recidivism in the first 24 months

16

following release; by contrast, offenders with one criminal history point (but which are in Mr. Brown's criminal history category) have twice his recidivism rate. Id., at 7 and 23 (2004). Mr. Brown is thus an improbable re-offender.

In response to the findings of the Sentencing Commission regarding recidivism, courts have taken first-offender status into account when fashioning an appropriate sentence under 18 U.S.C. § 3553(a). See, e.g., United States v. Darway, 255 Fed. Appx. 68, 73 (6th Cir. 2007) (upholding sentence in child pornography case as reasonable where district court granted downward variance based on defendant's first-offender status; United States v. Cabrera, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants, like Mr. Brown, "with zero criminal history points are less likely to recidivate than all other offenders").

Moreover, in terms of likelihood for recidivism, there is no quantitative difference between the imposition of a guideline range sentence and a downward departure sentence. See U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 14 and 31 (2004) (overall recidivism rates for within guidelines sentence is 23.3% compared with 23% for downward departure sentences). An unduly harsh guideline sentence, as opposed to a more reasonable downward departure sentence, therefore, does not correlate with deterrence.

CONCLUSION

For the foregoing reasons, the defense asks the Court to impose sentence far below the advisory guideline range.

17

Case 5:19-cr-00072-KDB-DSC   Document 20   Filed 02/10/20   Page 17 of 19

Dated: February 10, 2020

                Respectfully submitted,

                /s/ Noell P. Tin

                TIN FULTON WALKER & OWEN PLLC
                301 East Park Avenue
                Charlotte, N.C. 28203
                T: (704) 338-1220
                F: (704) 338-1312
                ntin@tinfulton.com
                *Counsel for Mr. Brown*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has served the foregoing DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE with the Clerk of Court using the CM/ECF system, which will send notification of such filing to opposing counsel:

> Fred De La Rosa
> Assistant U.S. Attorney
> alfredo.de.la.rosa@usdoj.gov

Dated: February 10, 2020

/s/ Noell P. Tin