UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:21-cv-126-KDB
5:19-cr-72-KDB

| | |
|---|---|
| RONNIE DEAN BROWN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | **ORDER** |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. No. 1). Also pending is a Motion to Expand the Record. (Doc. No. 2).

**I.  BACKGROUND**

Petitioner was charged with a single count of receipt of child pornography and aiding and abetting the same in violation of 18 U.S.C. § 2252A(a)(2) and 2. (5:19-cr-72 ("CR") Doc. No. 1) (Bill of Information); see (CR Doc. No. 7) (Waiver of Indictment).

Petitioner signed a written Plea Agreement in which he admitted his guilt of Count One and acknowledged that: his sentencing exposure of a mandatory minimum of five years' imprisonment and a maximum of 20 years' imprisonment;[1] the sentence had not yet been determined; the Court would consider the advisory guidelines in determining the sentence; the Court "has not yet determined the sentence, and any estimate of the likely sentence is a prediction rather than a promise;" the sentence, up to the statutory maximum, would be determined at the

---

[1] The Plea Agreement notes that the minimum mandatory and maximum sentences may rise in circumstances not relevant to this case. (CR Doc. 3 at ¶ 4).

Court's sole discretion; and Petitioner would not be able to withdraw the plea as a result of the sentence imposed. (CR Doc. No. 3 at ¶ 6). The parties agreed to jointly recommend: pursuant to U.S.S.G. § 2G2.2(a)(2), Petitioner's base offense level is 22; the material in question involved a prepubescent minor or a minor under the age of 12 years, and therefore a two-level enhancement in offense level applies; the offense involves material that portrays sadistic or masochistic conduct or other depictions of violence, thus a four-level enhancement applies; a computer was used for the transmission of the material in question, and therefore, a two-level enhancement in offense level applies; the offense involved at least 600 images, and therefore a five-level enhancement applies; a two-level enhancement for obstruction of justice applies; and the plea is timely for purposes of U.S.S.G. § 3E1.1. (CR Doc. No. 3 at ¶ 7(a)-(g)). The parties remained free to argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, and adjustments to the offense level and to seek a departure or variance from the applicable guideline range. (CR Doc. No. 3 at ¶ 7(i)-(j)). Petitioner agreed to register as a sex offender and acknowledged he had been advised and understood the Sex Offender Registration and Notification Act. (CR Doc. No. 3 at ¶ 7(k)). The Plea Agreement sets forth the rights the Petitioner was waiving by pleading guilty including the right: to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not to be compelled to incriminate himself. (CR Doc. No. 3 at ¶ 15). Petitioner expressly agreed to waive his appellate and post-conviction rights except for claims of ineffective assistance of counsel and prosecutorial misconduct. (CR Doc. No. 3 at ¶¶ 17-19).

     A Rule 11 hearing was held before Magistrate Judge David Cayer on October 3, 2019. (CR Doc. No. 30). Petitioner stated, under oath, that he received a copy of the Bill of Information and discussed it with counsel. (CR Doc. No. 30 at 5). Petitioner stated that he fully understood the

2

Case 5:19-cr-00072-KDB-DSC   Document 37   Filed 08/25/21   Page 2 of 14

charge against him and the maximum and minimum penalties of not less than five years and up to 20 years in prison. (CR Doc. No. 30 at 5-6). Petitioner agreed that: counsel had discussed how the sentencing guidelines may apply to his case; the Court would not be able to determine the applicable sentencing guideline range until after the presentence report was prepared and Petitioner has had an opportunity to comment on it; in some circumstances he may receive a sentence that is higher or lower than that called for by the guidelines; and he would still be bound by the plea and will have no right to withdraw it if the sentence is more severe than he expects or if the Court does not accept the Government's sentencing recommendations. (CR Doc. No. 30 at 6-7). When Judge Cayer asked whether Petitioner is "in fact guilty of this one count in the Bill of Information," Petitioner responded "Yes." (CR Doc. No. 30 at 8). Petitioner stated he understood that, by pleading guilty, he was waiving the right to plead not guilty, the right to have a speedy trial before a jury with the assistance of counsel, the right to summon witnesses to testify on his behalf, the right to confront witnesses against him, and the right to receive the presumption of innocence. (CR Doc. No. 30 at 7-8).

The Plea Agreement was summarized at the Rule 11 hearing. (CR Doc. No. 30 at 8-13). Petitioner stated that he understood those to be the terms of the Plea Agreement and that he agreed with them, including the appellate and post-conviction waiver. (CR Doc. No. 30 at 13). Petitioner confirmed that: he signed the Plea Agreement; his plea was freely and voluntarily entered; he was not promised anything other than the promises contained in the Plea Agreement; and he was not threatened to enter the plea agreement against his wishes. (CR Doc. No. 30 at 13-14). Petitioner stated that he had enough time to discuss possible defenses with counsel and was satisfied with counsel's services. (CR Doc. No. 30 at 14).

In support of Petitioner's guilty plea, the parties submitted a written Factual Basis that

3

states in pertinent part:

> On or about June 16, 2018 to on or about November 15, 2018, in Wilkes County North Carolina …, **defendant knowingly used the internet, a smart phone, and a computer, to receive files of child pornography via the internet**.
>
> Among the files received by the defendant included the following:
>
> a. An image depicting a nude prepubescent female kneeling before an adult male, who was wearing a t-shirt. The adult was holding a knife, pressed into the forehead of the child victim.
> b. An image depicting a toddler male performing cunnilingus on a prepubescent female as she was laying down on her back. The prepubescent female was performing fellatio on an adult male.
>
> The internet, computer, and smart phone are all means and facilities of interstate and foreign commerce.

(CR Doc. No. 2) (emphasis added). Petitioner stated at the Rule 11 hearing that he read the Factual Basis, understood it and agreed with it. (CR Doc. No. 30 at 13).

The Presentence Investigation Report ("PSR") reiterates the offense conduct from the Factual Basis. (CR Doc. 18 at ¶¶ 5-7). It also includes a Statement of Relevant Conduct which provides in part:

> In September 2018, HSI Charlotte received information that a KIK user from North Wilkesboro had been trading child pornography (dated June 16, 2018). The agents received an IP address and it came back to … the home address of Ronnie and Kelly Brown.
>
> On October 30, 2018, … Wilkes Count detectives … contacted Kelly Brown at her place of employment and told her that she might have been the victim of identity theft. Kelly Brown gave agents her husband's (Ronnie Brown) phone number and told them he was at the Charlotte airport going to Las Vegas. Charlotte HSI airport group contacted Ronnie Brown and informed him that the case was related to child pornography. Ronnie Brown refused to both speak to agents and to allow agents to search his phone.
>
> Shortly after contact had been made with him by HSI, **Ronnie Brown contacted Kelly Brown and told her that agents were looking into child pornography and to "get rid of his laptop."** Agents later learned that **Kelly Brown took the laptop to individual A, who refused to take the laptop. [Kelly Brown] then took the computer to individual B, who agreed to hold the laptop.**

4

> **Several days later, individual B felt uncomfortable and told Ronnie Brown (who had returned from Las Vegas) to get the computer. Ronnie Brown then took the computer to individual C, who locked the computer in their truck toolbox.**
>
> Several weeks later, individual B and C (who were friends) were speaking to one another and became concerned that there was child pornography on the computer. Both individuals B and C then took the computer to the Wilkesboro Sheriff's Office. They informed the police that Kelly Brown had given the computer to individual B and asked her to hide it. Kelly Brown also informed individual B that Ronnie Brown had told her to "get rid of the computer." Based on this information, a search warrant was obtained for the [Petitioner's home] address.
>
> The search warrant was conducted on December 19, 2018…. Among the items was a blue SanDisk Cruzer USB thumb drive, SD cards, and Dell Desktop computer…; all of these items were found to have contraband on them. A total of **4,188 files containing child pornography were found, 275 of the files contained infants and toddlers, and 10 files were found to depict sadomasochism**….
>
> **Kelly Brown was later interviewed and confirmed that she took the computer to individual A and individual B in an attempt to prevent law enforcement from seizing the computer. Kelly Brown stated that she did this at the instruction of the defendant. At the time that Kelly Brown followed the defendant's instructions, she and the defendant were aware that Homeland Security Investigations (HSI) was conducting an investigation into child pornography.**

(CR Doc. No. 18 at ¶¶ 9-14) (emphasis added).

The PSR calculated the base offense level as 22 pursuant to U.S.S.G. § 2G2.2(a)(2) because the offense is a violation of § 2252A. (CR Doc. No. 18 at ¶ 19). For specific offense characteristic, two levels were added because the material involved a prepubescent minor or a minor who had not attained the age of 12 years pursuant to U.S.S.G. § 2G2.2(b)(2); four levels were added because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, or sexual abuse or exploitation of an infant or toddler pursuant to U.S.S.G. § 2G2.2(b)(4); two levels were added because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material for accessing it with intent to view pursuant to U.S.S.G. § 2G2.2(b)(6); and five levels were added

5

because the offense involved more than 600 images containing child pornography pursuant to U.S.S.G. § 2G2.2(b)(7)(D). (CR Doc. No. 18 at ¶¶ 20-23). Two levels were added for obstruction of justice because Petitioner instructed Kelly Brown to "get rid of his laptop" after learning of the investigation into his possession of child pornography [and] [a]s a result, Ms. Brown gave the laptop to an individual in order to hide it from investigators." (CR Doc. No. 18 at ¶¶ 16, 26). Three levels were deducted for acceptance of responsibility, based on Petitioner's written statement: "I accept responsibility for my role as set out in the factual basis." (CR Doc. No. 18 at ¶¶ 17, 29-30). The total offense level was 34. (CR Doc. No. 18 at ¶ 31). Petitioner had zero criminal history points and a criminal history category of I. (CR Doc. No. 18 at ¶¶ 41-42). The resulting advisory guideline range was 151 to 188 months' imprisonment and at least five years of supervised release. (CR Doc. No. 18 at ¶¶ 68, 71).

Prior to sentencing, defense counsel filed a Sentencing Memorandum requesting that the Court vary downward because the advisory guideline range was excessive. (CR Doc. No. 20). He argued, *inter alia*, that Petitioner has accepted responsibility and has zero criminal history points, that § 2G2.2 is flawed, and that the Court should be guided by the factors pursuant to 18 U.S.C. § 3553(a) and the statutory minimum mandatory sentence, rather than the guideline range.

The sentencing hearing came before the Court on February 12, 2020. (CR Doc. No. 31). Petitioner stated that he read and understood the PSR and had adequate time to discuss it with counsel. (CR Doc. No. 31 at 4). Defense counsel requested a "substantial" downward variance based on Petitioner's history and characteristics, the offense conduct, and the unfairness of the sentencing guidelines. (CR Doc. No. 31 at 10). Petitioner's pastor addressed the Court as did Petitioner, who "apologize[d] for the situation and circumstances that's led to this…." (CR Doc. No. 31 at 13). The United States requested a guideline sentence based on Petitioner's obstructive

6

conduct and the seriousness of the offense. (CR Doc. No. 31 at 14).

The Court varied downward by two levels because the enhancement for use of a computer is almost universally applicable to modern child pornography cases, and there was no evidence that Petitioner shared any of the material. (CR Doc. No. 31 at 19-20). The reduced offense level was 32, resulting in a revised guideline range of 121 to 151 months' imprisonment. (CR Doc. No. 31 at 20). The Court considered the factors pursuant to § 3553(a) and sentenced Petitioner at the bottom of the adjusted advisory range to 121 months' imprisonment, followed by supervised release for life. (CR Doc. No. 31 at 22); (CR Doc. No. 22) (Judgment).

On direct appeal, Petitioner argued that the Court erred by applying an enhancement for obstruction of justice, and that counsel provided ineffective assistance by failing to object to that enhancement and entering into an appellate waiver. The Fourth Circuit Court of Appeals dismissed the appeal on September 28, 2020. United States v. Brown, 823 F. App'x 181 (4th Cir. 2020). It found that the sentencing claim was barred by Petitioner's knowing and voluntary appellate waiver and that the ineffective assistance claim should be raised, if at all, in a post-conviction motion because ineffective assistance of counsel did not conclusively appear on the face of the record.

Petitioner filed the instant pro se Motion to Vacate pursuant to 28 U.S.C. § 2255 on August 19, 2021.[2] (Doc. No. 1). He argues that counsel provided ineffective assistance which rendered his guilty plea involuntary. He asks the Court to vacate the conviction and sentence and return the case to the pre-plea stage.

Along with his Motion to Vacate, Petitioner filed a Motion to Expand the Record, asking the Court to consider his Declaration in support of the Motion to Vacate. (Doc. No. 2). The Motion

---

[2] See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

7

will be denied as moot because the Declaration is an exhibit to the Motion to Vacate and will be considered in support of Petitioner's claims.³ See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

The Court has concluded that no response from the United States is required, and now considers Petitioner's claim.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings …" in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

Petitioner contends that counsel was ineffective for: failing to adequately investigate Petitioner's "relevant criminal conduct;" misadvising him about his sentencing exposure; and coercing him to plead guilty even though he is not guilty of the offense. (Doc. No. 1-1 at 8).

---

³ Petitioner appears to rely on Rule 7 of the Rules Governing Section 2255 Proceedings in the United States District Courts provides that, if a § 2255 Motion to Vacate is not dismissed, a judge may direct the parties to expand the record by submitting additional materials related to the Motion, and allows affidavits to be considered as part of the record.

8

Petitioner contends that he would have proceeded to trial but for counsel's deficient advice.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of

competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

First, Petitioner contends that counsel "was aware of Mr. Brown's relevant criminal conduct – or was deficient for failing to conduct minimally required investigation into the same – the fact that his advisory guideline range would be calculated based on that relevant conduct, and that he would be sentenced based on the same." (Doc. No. 1-1 at 8). As a preliminary matter, this claim is too vague and conclusory to support relief. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court). Assuming *arguendo* that Petitioner is arguing that counsel failed to adequately investigate the Statement of Relevant Conduct as set forth in the PSR's, he has failed to state a basis for relief. Petitioner voluntarily entered into a Plea Agreement that provided for a two-level enhancement for obstruction of justice; Petitioner has failed to explain how the Statement of Relevant Conduct that sets for the facts supporting that agreed enhancement could have rendered his plea involuntary. For instance, he does not assert that the Statement of Relevant Conduct contains inaccurate information or is otherwise objectionable.[4] To the extent that Petitioner is attempting to argue that counsel inaccurately estimated Petitioner's likely advisory range under the U.S. Sentencing Guidelines, this claim fails for the reasons

---

[4] Any substantive claim of a Guidelines calculation error was waived by Petitioner's knowing and voluntary post-conviction waiver. See generally United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992) (appellate waivers are generally enforceable); United States v. Lemaster, 403 F.3d 216, 200 (4th Cir. 2005) (the Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement).

10

discussed *infra*.

Next, Petitioner contends that counsel falsely promised Petitioner that he would only receive a sentence of between five and seven years imprisonment if he pleaded guilty, and told Petitioner that the Plea Agreement did not include that sentencing promise because that is "just how federal courts worked. See (Doc. No. 2-1 at 1-3).

This claim is conclusively refuted by the record. Petitioner stated in open court at the Rule 11 hearing that he understood that his minimum and maximum sentencing exposure of at least five years' imprisonment and a maximum of life imprisonment, the Court may sentence him up to the statutory maximum, any estimate of the likely sentence is a prediction rather than a promise, and the Court would not be bound by the parties' recommendations. (CR Doc. No. 30- at 6-7). His present self-serving contentions to the contrary are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Finally, Petitioner contends that he is not guilty of the offense and that counsel coerced him to plead guilty by telling Petitioner that he had "no chance" of winning at trial and that he and/or his wife would face serious charges punishable by a minimum of 15 years' imprisonment if he would not accept the plea. (Doc. No. 2-1 at 3).

Petitioner's protestation of innocence is conclusively refuted by the record. He admitted under oath at the Rule 11 hearing that he is in fact guilty of Count One in the Bill of Information,

11

and that he agreed with the Factual Basis with set forth his criminal conduct. (CR Doc. No. 30 at 8, 13). Petitioner's contention that counsel coerced him to plead guilty is also conclusively refuted by the record. He stated under oath at the Rule 11 hearing that nobody threatened, intimidated, or forced him to enter a guilty plea and that he was satisfied with his lawyer's services. (CR Doc. No. 30 at 13-14). Moreover, to the extent that counsel cautioned Petitioner that he and his wife could both face more serious charges, and that Petitioner had no chance of winning at trial, such was reasonable advice rather than coercion. Petitioner's admitted receipt of child pornography as set forth in the Factual Basis made his conviction at trial a virtual certainty. Evidence in the Statement of Relevant Conduct that: Petitioner and his wife attempted to thwart an ongoing criminal investigation; Petitioner and his wife passed off a laptop containing child pornography to others; and thousands of child pornography images were found numerous electronic devices in their home could have led reasonable counsel to believe that Petitioner and his wife could have been charged with criminal obstruction and/or additional child pornography offenses. See generally 18 U.S.C. § 1510 (obstruction of criminal investigations); 18 U.S.C. § 2252A. Counsel was not ineffective for cautioning Petitioner, under these circumstances, that Petitioner would almost certainly be convicted at trial and that the United States may choose to charge Petitioner and/or his wife with further criminal conduct.

Moreover, Petitioner cannot demonstrate prejudice. Despite his present self-serving statement that he would have proceeded to a jury trial but for counsel's alleged deficient advice, it would not have been objectively reasonable for Petitioner to do so. The Factual Basis and Statement of Relevant Conduct reveal that there was extremely strong evidence of Petitioner's guilt, and further, he received a two-level reduction in his offense level for accepting responsibility by pleading guilty. See generally United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015)

("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); see, e.g., United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming). His present self-serving contentions that he would have proceeded to trial had counsel performed effectively are rejected.

The record reveals that Petitioner's guilty plea was knowing and voluntary and that ineffective assistance of counsel did not render it involuntary. Therefore, Petitioner's Motion to Vacate is denied.

### IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is denied.

**IT IS, THEREFORE ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. Petitioner's Motion to Expand the Record, (Doc. No. 2), is **DENIED** as moot.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the

denial of a constitutional right).

4. The Clerk is instructed to close this case.

Signed: August 25, 2021

Kenneth D. Bell
United States District Judge